UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 3:16-cr-00162 |
| v. | ) JUDGE TRAUGER |
| | ) |
| JAMES C. MCWHORTER | ) |

UNITED STATES' SENTENCING POSITION AND MEMORANDUM

The United States of America, by and through S. Carran Daughtrey, Assistant United States Attorney for the Middle District of Tennessee, does not object to the Presentence Investigative Report (PSR) in this case and submits the following sentencing memorandum in support of the recommended sentence of incarceration of 14 months, followed by three years of supervised release.

**Factual Background**

James C. McWhorter was convicted by a jury in the Middle District of Tennessee on November 20, 2009, in case #3:07-cr-00159 in the Middle District of Tennessee for the following crimes:

1. Conspiracy to Produce False Identification Documents and Produce Counterfeit Securities, in violation of Title 18 United States Code, Section 371;

2. Production of False Identification Documents, in violation of Title 18 United States Code, Section 1028(a)(1);

3. Possession with Intent to Use Five or More False Identification Documents, in violation of Title 18 United States Code, Section 1028(a)(3);

4. Unlawful Possession of Document Making Implements, in violation of Title 18 United States Code, Section 1028(a)(5); and

5. Aggravated Identity Theft, in violation of Title 18 United States Code, Section 1028A.

1

On June 28, 2010, U.S. District Court Judge Robert Echols sentenced McWhorter to 124 months to be served in the U.S. Bureau of Prisons (BOP), to be followed by three years of supervised release. After McWhorter served the majority of his sentence, the U.S. Bureau of Prisons found him to be eligible for their residential reentry program and released him to the custody of a residential reentry center, Diersen Charities, in Nashville, Tennessee, on March 18, 2015. While living there, the defendant reported to Diersen Charities that he was working as a paralegal at Strategic 1 Consulting LLC. On September 7, 2015, McWhorter checked out of Diersen Charities to go to work and was due back at 11:30 p.m. that night. He did not, however, ever return to the residential reentry center nor did he have permission to permanently leave the residential reentry center. McWhorter's whereabouts remained unknown for over 8 months until he was arrested on or about May 25, 2016, in South Bend, Indiana, on fraud charges. While those charges were "nolled" in favor of the federal case, the victim in that case remains uncompensated. Additionally, this defendant still owes $85,664.66, despite his having a trust that he represents is worth millions. PSR ¶¶ 58, 59.

## **Appropriate Sentence**

This Court is tasked with imposing a sentence that is sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. §3553(a)(2). The government submits that consideration of each of these factors as a whole supports a sentence of 14 months.

I.   Nature of the Offense, 18 U.S.C. § 3553(a)(1)

Pursuant to 18 U.S.C. § 3553(a)(1), this Court should consider the nature and circumstances of this offense. In this case, the defendant had been convicted and was serving the remainder of his sentence at a residential re-entry center, a privilege that not all inmates are awarded. Despite being given this opportunity, this defendant did not return to the residential re-

2

Case 3:16-cr-00162   Document 28   Filed 12/15/16   Page 2 of 7 PageID #: 117

entry center as directed and then fled the district. He was on the run for approximately eight months until he was arrested for yet another fraud charge. Such absconding is a rare occurrence, and in this case, it has resulted in significant additional time, effort, and cost to this Court and the criminal justice system as a whole. This behavior shows the lack of respect the defendant has for the criminal justice system and demonstrates his inability to abide by the rules of authority.

II.  Defendant's History and Characteristics, 18 U.S.C. § 3553(a)(1)

Pursuant to 18 U.S.C. § 3553(a)(1), this Court also should consider the defendant's history and characteristics. Perhaps the most significant aspects of this defendant's history and characteristics are how long he has been committing crimes and the number of convictions, which puts him at a Criminal History Category of V, even though half of his convictions are not even counted. He was first convicted of fraud at the age of 20 in May of 2000. He was given a sentence of probation but did not even bother to report to his probation officer, which resulted in the issuance of a probation violation warrant less than five weeks after he was sentenced. PSR ¶ 20. In October of that same year, he was convicted of theft of his mother's brand new car and making unauthorized withdrawals on her debit car. PSR ¶ 21. He was convicted two months later of two different incidents involving fraudulently using a credit card and passing worthless checks, for which he was sentence to probation, which he violated. PSR ¶ 22. In July of 2001, he was convicted in a trial of domestic assault of his mother, after beating her in the face and chest. He now claims he merely pushed her, something that defies believe since he was required to serve time for that offense. PSR ¶ 23. In October of the same year, he was again arrested for two different thefts, wherein he unlawfully used another's identification and also stole a 2001 Pontiac Grand Am from a dealership. PSR ¶ 24. Earlier the following year, he was arrested again on two counts of forgery (of a restaurant check), evading arrest, and reckless endangerment. He took the case to trial, was

3

convicted and incarcerated. He was released on parole, but violated his parole conditions by committing additional crimes, which resulted in federal charges. PSR ¶25.

In 2006, the defendant was involved in the manufacture of counterfeit driver licenses and commercial bank checks. He was found in possession of 345 counterfeit driver licenses, over 500 counterfeit commercial bank checks, equipment to make counterfeit items. He took the case to trial and was convicted and sentenced to serve 124 months to be followed by 3 years of supervised release. While incarcerated, he incurred multiple disciplinary infractions within under 2 years, including multiple incidents of abusing mail and phone privileges, assault of another, exchanging money for contraband, possession of an unauthorized item, conducting a business without authorization, bribing an official. After serving much of his time, he was placed at Diersen Charities, where he was to reside from June 16, 2015, until April 1, 2016. On September 7, 2015, however, he absconded and was not found for eight months, when he was arrested for yet another fraud. PSR ¶26.

The PSR includes numerous other charges of fraud which were dismissed, sometimes "due to more serious charges which are pending in other jurisdictions," as happened recently when Indiana nolled their charges after learning of the federal cases in Tennessee. See PSR ¶¶31-37. That charge was based on the defendant's cashing a payroll check from "Strategic I Consulting," which likely is not a legitimate company: it was allegedly owned by his girlfriend, who denied a romantic relationship with the defendant; no one returned calls by employees of the residential re-entry center who were looking for the defendant after he absconded; and of course the payroll check was no good. PSR ¶56.

4

In considering the history and characteristics of the defendant, it is illuminating that he represents he has access to a trust fund yet he has a large unpaid restitution balance. PSR ¶¶58, 59.

While the defendant clearly does have Hepatitis C, which he sought treatment for in prison and now uses as a basis for seeking probation, once released from imprisonment, he did not seek treatment until nearly a year after he was released from prison.

III. <u>Need for Sentence Imposed to Reflect the Seriousness of Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense</u>, 18 U.S.C. § 3553(a)(2)(A)

In determining the appropriate sentence, this Court also should consider, pursuant to 18 U.S.C. §3552(a)(2), the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. A sentence of probation for a defendant who has repeatedly violated the law and violated conditions of release would fail to promote respect for the law or provide just punishment for a man who clearly has little respect for the courts or the criminal justice system.

IV. <u>Affording Adequate Deterrence to Criminal Conduct</u>, 18 U.S.C. § 3553(a)(2)(B)

This Court is charged with considering whether a given sentence will afford adequate deterrence to criminal conduct and promote future lawful conduct, pursuant to 18 U.S.C. § 3553(a)(2)(B). A probationary sentence would afford no deterrence to criminal conduct but rather would send a message that absconding from a sentence will result in only a slap on the hand. A guideline sentence, however, *would* provide a deterrent and discourage more criminal activity upon release.

V. <u>Protection of the Public from Further Crimes of Defendant</u>, 18 U.S.C. § 3553(a)(2)(C)

In determining the appropriate sentence, the Court also should consider the need to protect the public from further crimes of the defendant, pursuant to 18 U.S.C. § 3553(a)(2)(C). In this

case, the defendant repeatedly has defrauded numerous members of the community, even after serving time for the fraudulent activity. A guideline sentence would protect the public for at least the time the defendant is incarcerated., whereas a probationary sentence would be unlikely to achieve the sentencing goal of protecting the public.

VI. Sentencing Guideline Range, 18 U.S.C. § 3553(a)(4)

This Court also should consider the advisory sentencing guidelines in determining the appropriate sentence, pursuant to 18 U.S.C. § 3553(a)(4). In this case the range is at least 12 to 18 months. Were this Court to find that the defendant committed a state offense punishable by a term of imprisonment of one year or more, as described in paragraph 37 of the PSR, four levels would not have been subtracted in the calculations, as done in paragraph 11 of the PSR, and the range would have been 24 to 30 months. While the United States has chosen not to expend the funds to bring in the victim of the state felony case charging Check Deception to directly prove that the defendant committed a felony while on escape status, the United States encourages this Court to take this incident into consideration given that the victim has never recovered the funds.

VII. Disparity in Sentencing, 18 U.S.C. § 3553(a)(6)

Defendants who are convicted of absconding usually receive sentences far greater than the probationary sentence here. See, for example, United States v. Massey, 3:15-cr-00040 (sentenced to 15 months); United States v. Rodgers, 3:15-cr-00011 (sentenced to 8 months); United States v. Marsh, 3:13-cr-00191 (sentenced to 27 months); United States v. Asher, 2:12-cr-00152 (sentenced to 20 months in 2012); United States v. Bell, 3:12-cr-00093 (sentenced to 9 months); United States v. Armstrong, 3:08-cr-00178 (sentenced to 18 months after escape from halfway house); United States v. Hargrove, 3:10-cr-00196 (sentenced to 12 months after absconding during sentencing); United States v. Beach, 3:08-cr-00146 (sentenced to 15 months after escape from halfway house);.

Most, if not all, of these cases involved defendants who were in non-secure custody or awaiting sentencing. The undersigned attorney was unable to find any local escape or absconding cases that resulted in a probationary sentence. Thus, a sentence within the guideline range for this defendant would avoid disparate sentencing.

## Conclusion

The United States submits that sentencing this defendant to 14 months, a sentence within the guideline range, will satisfy the goals of 18 U.S.C. §3553(a) for the reasons described herein.

Respectfully submitted,

DAVID RIVERA
United States Attorney for the
Middle District of Tennessee

s/ S. Carran Daughtrey
S. Carran Daughtrey
Assistant United States Attorney
110 Ninth Avenue South, Suite A-961
Nashville, Tennessee 37203-3870
Telephone: (615) 736-5151

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served electronically on Michael C. Holley, Assistant Federal Public Defender, attorney for defendant, on this, the 15th day of December, 2016.

s/ S. Carran Daughtrey
S. Carran Daughtrey