UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| JAMES CHRISTOPHER MCWHORTER | ) | |
| | ) | No. 3:07-cr-00159-1; 3:16-cr-00162 |
| v. | ) | JUDGE TRAUGER |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TERMINATE SUPERVISED RELEASE

The United States of America, by and through S. Carran Daughtrey, Assistant United States Attorney for the Middle District of Tennessee, hereby responds in opposition to the defendant's Motion for Early Termination of His Supervised Release. D.E. 711.[1] James Christopher McWhorter currently is serving a three-year term of supervised release after serving time for multiple counts of fraud and escape in the above styled cases. He began this term of supervised release on July 21, 2017, and has now served approximately one third of the three-year term. This defendant has an extensive criminal history of fraud: at his most recent sentencing, on December 16, 2016, he had a criminal history category of V based on six different convictions for fraudulent activity; he had been arrested in six additional cases for fraudulent activity; and he had had multiple disciplinary issues while incarcerated. See Case #3:16-cr-162, PSR at 7 to 16 (hereinafter "PSR"). He now seeks to terminate his supervised release early. Case #3:07-cr-159, D.E. 711. The defendant, however, has failed to demonstrate any extraordinary changes in circumstance that

---

[1] The defendant has filed this motion under case 3:07-cr-00159-1, although the United States believes the motion also should include the defendant's more recent case, 3:16-cr-00162, wherein he was sentenced to 8 months consecutive to the remaining sentence in 3:07-cr-00159-1, to be followed by three years of supervised release. Case #16-cr-00162, D.E. 32: Judgment.

1

would justify early termination of his supervised release. Wherefore, the United States requests this Court deny the motion.

## Statement of Facts

By way of background, on November 8, 2006, the defendant James Christopher McWhorter was arrested on multiple counts of production of false documents, conspiracy to produce false documents, possession of false identification documents, possession of false document making implements, and aggravated identity theft. McWhorter was found to be in possession of 345 counterfeit Tennessee and Florida driver's licenses and more than 500 counterfeit commercial bank checks, among other false document making devices and instruments. Law enforcement officers determined that McWhorter, along with other defendants, had passed, uttered, and cashed hundreds of counterfeit payroll checks at numerous businesses during the course of the conspiracy, with an actual loss of $128,383.55 and an intended loss of $246,448.44. The defendant was convicted by a jury and sentenced to 124 months of custody to be followed by three years of supervised release. The Bureau of Prisons released McWhorter early to Diersen Charities, a residential reentry center in Nashville, Tennessee, to serve the remaining few months of his sentence. PSR at ¶ 26.

While at Diersen Charities, McWhorter apparently worked as a paralegal for various attorneys in the Nashville area, through a business set up specifically for defendant by his friends, known as Strategic 1 Company (hereinafter "Strategic 1"). Case # 3:16-cr-00162, D.E. 34: Sentencing Hearing Transcript (hereinafter "SHTR") at 13-14. Strategic 1 paid for an office space and had a bank account. SHTR at 14. Although the defendant alleged that additional members of the halfway house were employed through Strategic 1, the receptionist of the office building

identified McWhorter as the only person associated with Strategic 1, and no other employees were paid from the bank account. SHTR at 30.

On September 8, 2015, McWhorter left Diersen Charities to go to work, but he did not return as required. He claims that he had been having breakfast with his best friend, Eugene Nesbitt, on the morning of September 8, 2015, when both he and Nesbitt were shot at but not injured. After the shooting, the defendant apparently fled to Baltimore, Maryland with Nesbitt, claiming to have panicked after the shooting. McWhorter stated that Nesbitt was later killed after Nesbitt went to meet someone to discuss making fraudulent documents. Approximately three days later, the defendant and his girlfriend moved to South Bend Indiana. PSR at ¶ 46.

On November 25, 2015, approximately 2½ months after leaving Nashville, the defendant cashed a payroll check from Strategic 1 dated November 23, 2015, in the amount of $1,459.96, in Indiana. PSR at ¶ 37; SHTR at 30. The defendant was arrested six months later, on May 26, 2016, in South Bend, Indiana for "check deception" for cashing the fraudulent payroll check on November 25, 2015. While Check Smart confirmed that the defendant had provided identification and the check had been "verified" according to company procedures, the check ultimately was rejected and Check Smart had not ever recovered the funds. PSR at ¶ 37. When Check Smart employees and investigating officers attempted to contact Strategic 1 to obtain the funds, their calls were never returned. SHTR at 31.

At the sentencing hearing for the defendant's escape charge in December of 2016, this Court referenced the defendant's having attempted to pass the check after leaving halfway house, noting that McWhorter had been caught and arrested in Indiana. SHTR at 18, 57. This Court ultimately imposed a sentence of eight months in custody, a downward variance from the guideline range of 12 to 18 months. SHTR at 61; PSR at 23. In determining the appropriate sentence, the

Court considered several factors: the defendant pleaded guilty and accepted responsibility for escaping from the halfway house; the defendant's escape showed "disrespect and a lack of trust in the judicial system"; the defendant's claim of legitimate work placement and future job opportunities did not match up with being shot at and fleeing the city; and the defendant fled from custody and was a fugitive for nine months until he was apprehended on another fraud charge. SHTR at 54 - 56. Additionally, the Court stated it was unlikely that Strategic 1 was a real company and that combined with the defendant's numerous charges of fraud on his criminal history, it was difficult to believe his attempt to cash a check in Indiana from the shell company located in Tennessee, months after escaping, was not also a fraudulent act. SHTR at 57.

Finally, the Court also took in to consideration defendant's Hepatitis C status, and the potential that delayed medical treatment, due to incarceration, could result in both cirrhosis of the liver or liver cancer. Therefore, the Court reasoned that a lower-than-guideline-range sentence was appropriate. SHTR at 61. Furthermore, the Court stated that while sensitive to defendant's Hepatitis C diagnosis, it would not allow a condition brought on by his own illegal behavior to "trump everything else." SHTR at 59. The defendant now claims to have been cured of Hepatitis C. Case 3:07-cr-00159, D.E. 711, at PageID# 4726-27.

In his Motion to Terminate Supervised Release, the defendant asserts that he has maintained steady employment, has regularly paid restitution, has a stable life, is enrolled in law school, has submitted all monthly written reports, has had no new arrests, and has passed drug screens. The U.S. Probation Officer confirms that the defendant is in compliance with supervised release, as is expected of probationers. The defendant admits that he did have the issue, addressed by this Court earlier this year, of holding himself out to be an attorney, which he claims was a mistake by the website manager. Case 3:07-cr-00159, D.E. 711, at PageID# 4727.

The defendant argues that his supervised release has constrained his rehabilitation because before applying for his moral fitness examination to be an attorney in California, he will need to be free of any criminal justice sentence for three years. He also states he needs to travel outside of the United States as an employee of Tennyson & Wiggington. Finally, he argues that he is unable to visit his children in Jackson spontaneously and that his special needs adult daughter cannot drive to see him.

The U.S. Probation Officer recently informed the undersigned attorney of several changes with regard to the defendant's circumstances since this motion was filed. First, the defendant is no longer working for Tennyson & Wiggington, thus obviating his need to travel outside the country. Additionally, the defendant's special needs daughter is expected to move in with him, which would change the circumstances that were limiting his spontaneous visits with his children. Finally, given the defendant's long history of fraud, he would likely benefit from remaining on supervised release for three years with no further problems should he decide to follow through with his desire to practice as an attorney.

## **Argument**

This Court may terminate a defendant's term of supervised release if it is "satisfied that such action is warranted by the conduct of the defendant released and in the interest of justice." 18 U.S.C. § 3583(e)(1). The statute requires a court to consider the following factors in making this decision:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(3) the need for the sentence to protect the public from further crimes of the defendant;

(4) the need for the sentence to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner;

(5) pertinent guidelines and policy statements issued by the U.S. Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records and who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3583(e) (citing 18 U.S.C. § 3553(a) factors). The statute "clearly indicates that a district court must conclude that the early termination of supervised release is warranted both by the individual's conduct and also by the interest of justice." *United States v. Suber*, 75 F. App'x 442, 444 (6th Cir. 2003). "Early termination of supervised release is a discretionary decision that is only warranted in cases where the defendant shows changed circumstances-such as exceptionally good behavior." *United States v. Atkin*, 38 F. App'x 196, 198 (6th Cir. 2002) (citing *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir.1997)); *United States v. Campbell*, No. 05-6235, 2006 WL 3925588, at *1 (6th Cir. 2006). Though the Sixth Circuit cases stating this proposition are unpublished, many federal courts have adopted the same approach, including the U.S. District Court for the Middle District of Tennessee. *See United States v. Blythe*, Order on Defendant's Motion to Terminate Supervised Release, No. 3:15-cr-00114, Docket Entry 8, at 2-3 (M.D. Tenn. April 22, 2016) (citing cases).[2]

---

[2] In explaining his decision, Judge Sharp referenced Sixth Circuit and other appellate court decisions:
> The Sixth Circuit's unpublished decisions in *United States v. Campbell*, 2006 WL 3915588, at *1 (6th Cir. July 25, 2006) and *United States v. Atkin,* 38 F. App'x 196, 198 (6th Cir. 2002) are not controlling, but they are not the only decisions stating the proposition. See, *United States v. Laine*, 404 F. App'x 571, 573-74 (3rd Cir. 2010) ("early termination of supervised release under section 3583(e) should occur only when the sentencing judge is satisfied that something exceptional or extraordinary warrants it," and "[s]imple compliance with the conditions of supervised release are expected and not exceptional"); *United States v. Pruitt*, 2014 WL 4270008, at *3 (C.D. Ill. Aug. 28, 2014) ("The Court also notes that many district courts and other Courts of Appeals have held that

The defendant's motion presents no argument that early termination of supervised release is warranted by his conduct or in the interest of justice. Beyond his compliance with supervised release, the defendant has not shown that anything has changed since his original sentencing with respect to his extensive criminal history, the nature of the fraud offenses, the need for deterrence, the sentencing guidelines, sentencing disparities, or providing restitution. The defendant's compliance with supervised release conditions is expected and should not serve as an automatic basis for early release from his sentence. Indeed, his lawful conduct proves nothing more than the fact that for the most part, he can follow the law while under supervision. It is not a guarantee that his conduct would be the same if released from supervision, especially given his extensive criminal history and his short period of time on supervision. Compliance itself simply does not constitute the sort of exceptional conduct that would demonstrate that early termination of supervised release would be in the interest of justice. In fact, requiring this defendant to serve the full term of supervised release would be consistent with the goal of "protect[ing] the public from further crimes of the defendant." See 18 U.S.C. § 3553(a)(2)(C). At this time, it appears that supervision is accomplishing its purpose and is serving to deter further criminal activity by this defendant.

---

the conduct of the defendant necessary to justify early termination should include something more than just following the rules of supervision, such as 'new and unforeseen circumstances, or where the defendant's behavior has been exceptionally good'"); *United States v. Etheridge*, 999 F. Supp. 2d 192, 197 (D.D.C. 2013) ("a defendant must show something 'of an unusual or extraordinary nature' in addition to full compliance" in order to warrant early termination). After all, whether to grant early termination is a discretionary decision, and 18 U.S.C. § 3583(e)(1) states that the Court may terminate supervised release "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]" 18 U.S.C. 3583(e)(1). Certainly, extraordinary or exemplary conduct can serve as a guide in gauging whether early release is justified by the conduct of the defendant and is in the interests of justice, particularly since the goal of supervised release is "the rehabilitation of the defendant and the protection of the public." *United States v. Darden*, 552 F. App'x 574, 578 (6th Cir. 2014).

## Conclusion

The defendant has failed to demonstrate any extraordinary changes in circumstance that would justify justifies early termination of his release. Wherefore, the United States requests this Court deny the motion.

Respectfully submitted,

DONALD Q. COCHRAN
United States Attorney
Middle District of Tennessee

*/s/ S. Carran Daughtrey*
S. Carran Daughtrey
Assistant United States Attorney
110 Ninth Avenue South, Ste. A-961
Nashville, Tennessee 37203

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served by ECF on John Tennyson, attorney for James Christopher McWhorter, on this, the 22nd day of August, 2018.

*/s/ S. Carran Daughtrey*
S. Carran Daughtrey